IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>  v.<br><br>KWAN WO IRONWORKS INC.,<br><br>        Defendant. | Case No. 21-cv-06661-MMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DIRECTIONS TO CLERK** |

Before the Court is defendant Kwan Wo Ironworks, Inc.'s ("Kwan Wo") Motion for Summary Judgment, filed June 6, 2022, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Zurich American Insurance Company ("Zurich") has filed opposition, to which Kwan Wo has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND[2]

Between April 2013 and April 2015, Zurich, a "corporation engaged in the insurance business" (see First Amended Complaint ("FAC") ¶ 1), provided insurance to Kwan Wo, a California "ironworks company" that "installs structural steel framing for construction projects" (see FAC ¶ 2; Aff. of Carla Flammini in Supp. of Zurich's Opp. to Mot. for Summ. J. (hereinafter, "Flammini Aff.") ¶ 26), under a commercial package ("CP") insurance policy, a general liability ("GL") insurance policy, and two workers'

---

[1] By order filed July 8, 2022, the Court took the matter under submission.

[2] The following facts are undisputed.

compensation ("WC") insurance policies (see Flammini Aff. ¶¶ 2-4).[3]  Under the terms thereof, "the initial premium charged for each policy [was] an estimate, subject to an audit" to be conducted "after the conclusion of the policy period"; if the audit showed that "the actual exposure exceed[ed] the estimated exposure used to calculate the initial premium, then an additional premium [was] owed to [Zurich]."  (See id. ¶¶ 6-7.)

On or around April 28, 2015, April 29, 2015, and May 11, 2015, Zurich, after performing audits pursuant to the above-referenced terms and determining Kwan Wo owed additional premiums for each of the policies, sent "audit results" to Kwan Wo's insurance broker and demanded payment of post-audit premiums in a total amount of $308,222.70.  (See id. ¶¶ 8-11; Decl. of Horace W. Green in Supp. of Mot. for Summ. J. (hereinafter, "Green Decl.") ¶¶ 7-18, Ex. A at ECF pp. 10-18, Ex. C at Responses to Request for Admission Nos. 4, 6.)  On August 10, 2016, Kwan Wo paid $100,000.00 toward the premiums owed.  (See Flammini Aff. ¶ 12.)  Thereafter, on August 29, 2016, Zurich sent Kwan Wo's broker a "Statement of Account" reflecting an account balance of $308,228.70.  (See id. ¶ 13.)  On October 5, 2016, Kwan Wo paid another $35,660.99 toward the post-audit premiums.  (See id. ¶ 14.)[4]

On September 30, 2020, Zurich issued another demand, namely, a "Statement of Account and demand for payment of $172,381.71" (see id. ¶ 15), after which, on August 10, 2021, "having received no payment in response to the September 30, 2020 demand, and having recalculated the amount due," Zurich issued a final "Statement of Account and demand for payment of $172,189.71" (see id. ¶ 16).  To date, no further payments have been made by Kwan Wo.  (See id. ¶ 18.)

On August 27, 2021, Zurich filed an initial complaint and, subsequently that same

---

[3] The CP policy and the first WC policy covered the period of April 1, 2013, to April 1, 2014, and the GL policy and second WC policy covered the period of April 1, 2014, to April 1, 2015.  (See id.)

[4] Zurich allocated Kwan Wo's two partial payments toward fully satisfying the post-audit premiums owed for the CP and GL policies and reducing the amount owed for the 2013-2014 WC policy.  (See id. ¶¶ 20-21.)

2

date, filed an FAC, in each instance asserting, based on the above allegations, a single cause of action for "Breach of Contract," by which Zurich seeks to collect payment of the unpaid post-audit premiums.

**LEGAL STANDARD**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a).

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact. Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." See Celotex, 477 U.S. at 324 (internal quotation and citation omitted). "When the moving party has carried its burden under Rule 56[ ], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (citations omitted). "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light most favorable to the party opposing the motion." See Matsushita, 475 U.S. at 587 (internal quotation and citation omitted).

**DISCUSSION**

By the instant motion, Kwan Wo contends Zurich's FAC is barred by the applicable statute of limitations. As set forth below, the Court agrees.

As an initial matter, the parties disagree as to whether Zurich's breach of contract claim is governed by California law or Illinois law. Kwan Wo contends the claim is subject

to California's four-year statute of limitations, see Cal. Code Civ. P. § 337, whereas Zurich contends Illinois's ten-year statute of limitations applies, see Ill. Comp. Stat. 5/13-206.

"A district court in a diversity case must apply the same choice of law analysis that would be applied by state courts in the jurisdiction in which the district court is situated." See Liew v. Official Receiver & Liquidator (Hong Kong), 685 F.2d 1192, 1195 (9th Cir. 1982). In that regard, California courts have "moved away from a mechanical choice of law process" and, instead, employ a "governmental interest analysis approach." See Strassberg v. New England Mut. Life Ins. Co., 575 F.2d 1262, 1263-64 (9th Cir. 1978) (internal quotation omitted). Under this approach, "courts examine the policies underlying the competing laws of the involved states to determine which states are interested in having their laws applied to the issues in question." See Ashland Chem. Co. v. Provence, 129 Cal. App. 3d 790, 793-94 (1982) (internal quotation omitted). "Only if both California and the foreign state have a strong interest in the application of their own law to the controversy will a true conflict be said to exist, requiring an examination of the comparative impairment to each states' interest of the choice of one rule over the other." Strassberg, 575 F.2d at 1264 (internal quotation and citation omitted). "When only one of two potentially concerned states has an interest in having its law applied," however, "the conflict of laws is said to be false," and "the court simply applies the law of the only interested state." Ashland, 129 Cal. App. 3d at 794 (internal quotation and citation omitted).

As one California appellate court has noted, the policy underlying statutes of limitations are "designed to protect the enacting state's residents and courts from the burdens associated with the prosecution of stale cases." See id. Consequently, where, as here, "the forum is in California and the [sole] defendant is a California resident," only "California has an interest in having its statute of limitations applied." See Nelson v. Int'l Paint Co., 716 F.2d 640, 645 (9th Cir. 1983). Under such circumstances, the "conflict between California and [Illinois] . . . law is false," and California's four-year statute of

4

limitations applies. See id. (holding, where sole defendant resides in forum state, conflict between statutes of limitations is "the very paradigm of the false conflict" (internal quotation and citation omitted)). The Court next turns to the question of whether Zurich's breach of contract claim was timely filed.

 Under California law, the statute of limitations generally begins to run "from the time a cause of action accrues." Barlow v. City Council of Inglewood, 32 Cal. 2d 688, 694 (1948) (internal quotation and citation omitted). "A cause of action for breach of contract accrues at the time of breach," see Cochran v. Cochran, 56 Cal. App. 4th 1115, 1120 (1997), or "when the plaintiff discovers, or could have discovered through reasonable diligence, the injury and its cause," see Angeles Chem. Co. v. Spencer & Jones, 44 Cal. App. 4th 112, 119 (1996).

 Here, Kwan Wo's alleged breach occurred no later than October 5, 2016, when Kwan Wo first paid less than the full amount of post-audit premiums demanded by Zurich (see Flammini Aff. Ex. A at ECF p. 28 (requiring Kwan Wo to "pay all premiums when due"), Ex. B at ECF p. 72 (same)); see also Stewart v Life Ins. Co. of N. Am., 388 F. Supp. 2d 1138, 1142 (E.D. Cal. 2005) (holding "failure to [timely] pay premiums [is] . . . a material breach" of "any contract of insurance"),[5] and, as noted, the instant action was filed on August 27, 2021, more than four years thereafter.

 Zurich agrees Kwan Wo's alleged failure to pay the post-audit premiums constituted a breach of the policies. (See Opp. at 7:9-10.) Zurich argues, however, that in light of the parties' "ongoing contractual obligations," specifically, Zurich's obligation to "defend" against workers' compensation claims "arising from covered occurrences" and Kwan Wo's obligation to "assist in the investigation and resolution" of those claims (see Opp. at 6:21, 7:3-8; see also Flammini Aff. Ex. A at ECF pp. 24, 26-28; id. Ex. B at ECF

---

[5] Zurich contends there is a triable issue of fact as to whether Kwan Wo "actually received the audit results that were forwarded by Zurich to [Kwan Wo's] insurance broker." (See Opp. at 13:3-12.) Zurich, however, cites no authority suggesting that whether or when Kwan Wo received the results has any bearing on the date of its breach.

pp. 68-72), "the start of the statute of limitations was postponed" until Zurich closed the last workers' compensation claims it was handling under the WC policies (see Opp. at 6:16-20, 7:17-22).[6]

There is no dispute that "where [a] defendant, obligated to perform over a period of time, is guilty of material breach, the plaintiff may waive it and stand on the contract until the time for final performance," i.e., "the time when the act was to be done." Eloquence Corp. v. Home Consignment Ctr., 49 Cal. App. 5th 655, 663 (2020) (internal quotation and citation omitted). Here, however, Zurich's breach-of-contract claim is not based on a breach of any ongoing obligation, but, rather, on a breach of Kwan Wo's obligation to pay the final post-audit premiums "when due." (See Flammini Aff. Ex. A at ECF p. 28 (requiring premiums to be paid "when due") Ex. B at ECF p. 72 (same)); see also Eloquence, 49 Cal. App. 5th at 663 (finding, where breach of contract claim was "not based on some continuing obligation," but, rather, a "failure to perform [a] discrete and specific obligation[] to pay . . . invoices," the "statute of limitations began running when the invoices came due").[7]

Further, Zurich's WC policies are "occurrence-based policies" that require Zurich to "provide coverage" for any "loss, damage[,] or injury" that "occurred" during the applicable policy periods, "regardless of when [the] . . . loss, damage[,] or injury is reported." (See Flammini Aff. ¶ 25.)[8] Consequently, workers' compensation claims could be submitted under those policies long after they have expired, see In re Ins. Antitrust

---

[6] The last claims for the 2013-2014 and 2014-2015 WC policies were closed on February 6, 2018, and March 9, 2020, respectively. (See Flammini Aff. ¶ 27, Ex. L. at ECF p. 756.)

[7] Although the WC policies do not specify a date by which payment must be made, "[i]f no time is specified for the performance of an act" that is "capable of being done instantly," such as "payment of money," the act "must be performed immediately upon the thing to be done being exactly ascertained." See Cal. Civ. Code § 1657.

[8] Kwan Wo's "default . . . [does] not relieve [Zurich] of [its] dut[y]" to continue covering claims that arose while the policies were still in force. (See id. Ex. A at ECF p. 25.)

6

Litig., 938 F.2d 919, 923 (9th Cir. 1991) (noting claim "for occurrence [arising] during . . . life" of occurrence-based insurance policy could be made "years after the policy . . . expire[s]"), and postponing the running of the statute of limitations based on Zurich's ongoing obligation to defend against such claims would essentially allow Zurich to "toll the statute of limitations indefinitely," see Boon Rawd Trading Int'l Co. v. Paleewong Trading Co., 688 F. Supp. 2d 940, 948-49 (N.D. Cal. 2010) (emphasis omitted) (finding plaintiff could not base running of statute of limitations on "ongoing contractual obligations" that had no "specific . . . time for performance").

Accordingly, Kwan Wo's motion for summary judgment will be granted.

## CONCLUSION

For the reasons stated above, Kwan Wo's motion for summary judgment is hereby GRANTED, and the Clerk is DIRECTED to enter judgment in favor of Kwan Wo.

**IT IS SO ORDERED.**

Dated: July 28, 2022

MAXINE M. CHESNEY
United States District Judge